This is 416-0641, 750-751, Pupil v. Adam Smith, appearing on behalf of the appellant, St. Germain. Good morning. With the Appellate, John Zimmerman. Good morning, Counsel. Mr. St. Germain. Thank you, Your Honors, and may it please the Court, Counsel. My name is Santos St. Germain, and I am here on behalf of Mr. Adam Smith. I will be focusing on Issue 1 and 3, and will take any questions the Court might have on any of the other issues. The State, in this case, charged Mr. Smith with threatening a public official to wit Judge Robert Bollinger under Section 12-9A. The statute requires that a defendant knowingly communicates a threat to a public official. This Court has read the statute to require a true threat, as defined by the United States Supreme Court in Virginia v. Black. A true threat is any communication that expresses the speaker's intent to commit unlawful violence against a public official. In People v. Dye, this Court found that a statement that the defendant is going to get the public official, quote-unquote, is not a true threat. Similarly, the First District in People v. Wood found that a statement that the defendant wished, hoped, or dreamed that the public official would die is also not a true threat. Again, the First District in People v. Goodwin found that a statement from the public defender, from the defendant, demanding the public official to come out of his office and face him was not a true threat. In each of these cases, what the Court found to be a true threat, what the Court found lacking, was any expression, any words or conduct expressing a desire to carry out unlawful violence. Similarly, the October 27, 2015 voicemail in this case, in which it is alleged that Mr. Smith made a threat, is too big and too ambiguous to be considered a threat. Because in the voicemail, Mr. Smith only resorted to name-calling and accusations of corruption. He never made any statement that he wanted to physically harm the judge in this case. He never made any statements that he had any intent to harm the judge or that he had the means to carry out that intent. All he said is, you will hear from someone and I will take matters from there. One witness even testified that she heard the message, she was the first person to hear the message. She didn't consider it to be threatening, having neither a direct threat or an explicit threat, not even an implicit threat. The only evidence that the State offered to establish that there was a true threat was Judge Bollinger's subjective belief that there was a threat, and two other crimes' evidence that are disconnected from the voicemail in this case. As to Judge Bollinger's subjective belief, that is not the standard that this Court has found relevant in People Beguiled and that the First District has picked up in Woods and Goodwin. The subjective belief of the audience, even the alleged victim, does not transform the words that are stated or the message that is communicated into a true threat. The words must be looked within their own context and determine whether those words express an intent to harm the public official or to cause unlawful violence. As to the other crimes' evidence, I have two reasons why the other crime evidence does not establish a true threat. First is that the other crimes' evidence are disconnected from the voicemail, disconnected both temporally and contextually. Temporally, as in time, the other crimes' evidence occurred two months after Mr. Smith was arrested in this case. Why does that make a difference? It makes a difference because it does not, it makes a difference for two reasons, Your Honor. First, they occurred after the charges and therefore it is more likely than not that what Mr. Smith is expressing in those other crimes' evidence, those slips, what he's expressing, may be frustration as to the charges and not pre-existing frustration against the judge. If I could take a step back. Is the recipient of the threat supposed to analyze what the thought process of the threatening individual is? Not the recipient of the threat, Your Honor. It's the fact finder must look at the message and see if the message clearly and unambiguously expressed an intent to harm someone. The person who's communicating the message may well have an intent, but does his words express that intent? And in this case, the words of the voicemail did not express anything. It did not come even remotely close as to what this court found to be insufficient in people's regard. In your reply brief, you indicate that intent is not part of this offense. You state there is nothing in Section 12-9A that requires an intent to commit unlawful violence. Yes, the actual statute only requires knowingly. But the definition of true threat, which is the only way you can punish a threat under Virginia v. Black, under the First Amendment, is that it must be a true threat. And the definition of a true threat is whether the communicated message expresses an intent. What I should explain, Justice Harris, is a person may well or may not have an intent to cause harm. That person also may not have an intent to express such desire. But the words that he's communicating, what he is saying to his audience, does those words suggest such an intent? And in this case, the words are too vague and too ambiguous to reach to that level. So under your analysis, if it was just a bad choice of words, the defendant could still be convicted of this offense, even though he had no intention of actually fulfilling the threat. Yes, Your Honor. If the defendant said, you know, in a fit of anger, said, I'm going to kill you. Yes, that would meet the statutory requirement. That would meet the standards set in Virginia v. Black and in people v. Dodd. However, if the defendant says, for example, as in people v. Dodd, I'm going to get you. Or in people v. Wood, I hope you die. I hope you get run out of the street. And I hope I'm there to see you. His desire of something bad happening to you, without him saying, I'm going to make sure it happens, does not create a true threat. Because the purpose of the statute is to prevent intimidation. And without a suggestion that you're going to carry out some unlawful violence, there could not be intimidation. As to the other crimes evidence, Your Honor, as I stated, the other crimes evidence are temporarily disconnected from the voicemail. They occurred two months after the voicemail was created. They occurred while my client was waiting for his trial in this case. And he expressed his frustration with the case, also with the judge. But that frustration was a result as to the charges that he was facing. Not a pre-existing hostility towards Judge Bolinger in this case. However, as to other crimes evidence, they should not have been admitted as other crimes evidence. Because they are not indicated as to identity, nor as to motive or intent. As to identity, Mr. Smith's identity, although relevant, was never truly at issue because the state provided sufficient evidence to establish his identity. I thought he denied that he made the phone call. He denied it, but there was sufficient matching of his phone number with the phone number that actually made the phone call. Right, it could have been made on his phone without him being the person making the call, though. So identity, therefore, is an issue, is it not? Not necessarily, Your Honor, because Mr. Smith was pro se in this case. And the jury had opportunity, ample opportunity, to hear his voice, to observe him. He made an opening statement, he made a closing statement, he interrogated all the witnesses in this case. The jury was well capable to identify his voice on the voice recording and his voice as he was communicating to the jury and public. Intent was not, there was not an urgency to produce further evidence as to intent. However, the fact that intent was, there was sufficient evidence for intent, even suggests the problematic, the problem with the additional other crimes evidence. Because the jury could look beyond the intent element and just say, this guy is a bad person. He's citing Bible verses, he's making wild accusations against a judge, he's saying things about baseball league and playing bowling balls. The jury can look at that, look past the intent element and just say, this guy is not someone we want out on the street and we should find him guilty. And that's the prejudice in this issue, is that these other crimes, these slips, these notes, the language of these notes, although vague in themselves also, were very much angry and hostile and suggested bad character, which is an element to be looked at when addressing other crimes evidence. Yes, your honor? Well, in the phone call, he says the judge is a corrupt son of a bitch, right? Yes. And then he goes on to say, but I'm going to give you another chance. That kind of sounds like a threat, doesn't it? No, no. Okay, well let me just follow up. Then, in the other crimes evidence, he says he's going to ball you up as a bowling ball and make your ass a gutter ball. Now, when you put those two things together, that sounds like some intent to do some harm, doesn't it? No, your honor, but let me go back to my first point, which is you can't put these two things together and you shouldn't because they occur two months away from each other. Now, if I were to agree with you that the subsequent message, the one that he wrote while he was awaiting trial, if I agree with you that that is in fact a threat, which he was charged as such for that statement, it still doesn't suggest that that desire to harm the judge existed on October 27th. It's possible, and it's more likely than not, that that desire resulted from the fact that he was arrested. And in fact, if you look at these slips, you will see that he constantly says, I'm going to prove you guilty, I'm going to show you corruption, I'm going to beat these fraudulent charges. So, he's referring back to the fact that he was charged for these crimes, which he doesn't believe is a true crime. So, if you accept the fact that the statements made while he was arrested, while he was in custody, are in themselves threats. Those statements, if they are threats, occurred simply because he's frustrated with the charges. And that doesn't suggest that he had that frustration before October 27th. The second issue, Your Honor, is as to what he actually said in the voicemail, you know, calling him an SOB and telling him he's giving him a chance. We have to look at the context here. Mr. Smith filed five complaints against the Sheriff's Department and the State Attorney's Office, and Judge Bollinger dismissed those. And he thought that that was wrong. So, he's talking about a second chance to look at the issues. And we don't know what is going to happen if Judge Bollinger took that second chance. He doesn't say anything. He doesn't say, I'm going to hurt you, a couple of guys are going to come over. He doesn't say, I'm going to beat you up, hurt your family members. He just says, you will be hearing from someone soon. That someone can be anyone in this state, including the Judicial Inquiry Board. Given the fact that he accused him of corruption, that is the most likely suggestion there. If Mr. Smith's intention was to create, in the mind of the public official, the reasonable apprehension of immediate or future bodily harm, wouldn't that fulfill the requirements of the statute? None under the standard setting, people be died, or the requirement that Virginia be black. Mr. Smith's suggestive intention is not sufficient. It is sufficient under the statute, but under the First Amendment, and under Virginia be black, Mr. Smith must actually communicate that intention. It must be reasonable from the words. He has the intention, and he clearly, unambiguously, and specifically expressed that intention. In this case, looking at the October 27 voicemail, Mr. Smith says nothing that suggests he is willing or capable of committing unlawful violence against Judge Bollinger. Mr. St. Germain, can you place the voicemail in context to the civil proceeding? When was the voicemail left in relation to Judge Bollinger's rulings in the mandamus actions? Mr. Smith got notice of the mandamus action on October 26. He left the voicemail on October 27. He was subsequently arrested. He was confronted by the Sheriff's Department on October 28 and then arrested on October 29. You say he received notice of what? Of Judge Bollinger's dismissal of his case. Was it a written ruling? Or was it an oral ruling in court? My understanding of the record, Your Honor, is that the rulings were made into the docket and Mr. Smith maybe received them via mail messenger or he got noticed of it. It's not too clear how he knew of it, but he found out of the ruling on October 26 and made the phone call on October 27. Is there a follow-up to that question, Your Honor? Yes, that's it. Thank you. The context when he made the voicemail is relevant, Justice Harris. However, it's only relevant as to a second element in the statute. The key element that is at issue here is whether a threat was actually communicated. The second element is the purpose for the communication of the threat, which is was it communicated to because of some official conduct taken by the public official. I am willing to concede that the message, the voicemail, the October 27 voicemail was made as a result of the ruling in this case, but the first issue still remains whether that voicemail actually communicated a threat. These are my comments as to issue 1 and 3, is that there was no threat. The voicemail is the key issue here. You have to look at the words of the voicemail and determine whether Mr. Smith, if you look at the voicemail regardless of his intent, whether he actually expressed a desire to harm the judge, and in this case he did not. The voice, the slits that came after cannot provide context because they are separate in time, but also in context because they came after he was charged in this case, and it's more likely than not that they are a result of his frustration as to the charges in this case, and not any pre-existing desire to cause harm  or that the case be remanded for new trial without the other crimes evidence. Thank you, Your Honors. Thank you, Mr. Zimmerman. May it please the Court. Counsel. Good morning, Your Honors. My name is John Zimmerman from the 4th District Appellate Prosecutor's Office, here on behalf of the State. The State would like to begin by just reminding this Court the standard of review, which is when viewing the evidence in the light most favorable to the State, any rational trial or fact could have found the essential elements of the crime beyond a reasonable doubt. Now, Appellate Counsel continues to try to distinguish the voicemail from the subsequent inmate slips. However, the State's position is that they cannot be distinguished. They all stem from, as Justice Harris was getting at, these dismissals of the defendant's civil cases. As it was noted, this voicemail occurred... He was charged before the slips. He was charged before the slips. That is correct, Your Honor. So the elements of the offense have to exist at the time of the charge, right? Yes, that is correct, Your Honor. But the purpose of the slips was to show his intent at the time the communication was in fact given to Judge Bollinger. We don't have to find all of the elements relating to the offense within the voicemail itself, correct? I didn't get that. You have to be able to establish all of the elements of the offense by the voicemail message itself. Yes, Your Honor. And so when you look at the elements of the offense, it obviously requires that the voicemail message itself be a threat. Is that right? Yes, Your Honor. When you look at just a dictionary definition of threat, Webster's defines it as an expression of intention to inflict evil, injury, or damage. Just taking that as the definition, when you look at the voicemail message itself, what words within the voicemail message indicates the conveyance of a threat? In regards to the voicemail message, Your Honor, the state focuses on the statement such as he'll be hearing from someone, tried to give him a chance to reconsider while he's still got a chance to, I was trying to do something correct, trying to get it done legally, so I'll take it from there. And the fact that this voicemail was subsequent day of the denial of these miscellaneous remedies cases shows that the defendant is extremely upset with the denial of these MR cases and that now that things have not been done legally, he is going to take it the illegal route, which as testified on cross-examination by defendant, Judge Bollinger did state, although not dispositive, that he was afraid of future bodily harm that it would occur through this voicemail alone by itself. He stated it caused him quite a bit of concern and the clerk even stated that it was a watch your back statement. I think when looking at all this evidence. But we have to be able to find words that convey a threat. So notwithstanding what court personnel thought of the message or Judge Bollinger, what words convey a threat? And this is what you initially were saying. You said the words that the defendant was trying to give Judge Bollinger another chance to reconsider while he's got a chance. And so it's those words that you're saying convey a threat? Well yes, it's those words along with the vulgar language. Well vulgar language doesn't by itself indicate a threat, right? It can be an expression of anger or frustration which wouldn't be chargeable under this statute, correct? The state does agree with that. We have to find a threat conveyed. So again, with laser focus, tell us which words convey a threat. Again to restate what I previously stated, he said, so I'm sure he'll be hearing from someone. I was trying to give him a chance to reconsider while he's still got the chance to. And he was trying to do something correct. Something legal. So he'll take it from there. And I think it is important to look at these inmate slips because although a defendant does try to distinguish them being temporally and contextually different, they're not because they still refer back to this initial voicemail. You look at the threats within the slip. It's the same line of corrupt propaganda that he's trying to argue Judge Bollinger is pursuing against him. And then with all these biblical passages that further evidences what his intent was at the time of this voicemail. Did you have any follow-up question there, Justice Harris? Defendant's not a lawyer. Here at least based on what the record indicates. But if a lawyer had left that message saying that he wanted to give the judge a chance to reconsider, would he consider that a motion to reconsider at that point? In fact, trial judge has a certain period of time in which to reconsider a ruling. I've got to say I'm not so sure that the words you have identified convey a threat as opposed to a request to reconsider a ruling that had been made. How would you respond to that? Well, the state can understand that position, Your Honor. I believe that is why below they did attempt to introduce these inmate slips. Because it did further what his intent was. And they were arguing, as the jury was instructed, it is these inmate slips were introduced for the limited purpose of showing what defendant's intent or identity was. But they can't serve as a substitute for an element of the offense. The element of the offense has to be present within that voicemail. The element being a threat. So what is it exactly that is conveying, according to Webster, an expression of intention to inflict evil injury or damage? Your Honor, I've already stated it twice, so I'm not sure if there's much purpose in stating it again. But it would just be the voicemail in its entirety where he's saying he's done things legally and now he's going to get it taken care of by himself. I don't believe that sounds like a motion to reconsider in the state's eyes. Do you disagree with Mr. St. Germain's argument that it's necessary to establish a true threat? Do I disagree with that? No, Your Honor, I agree with that. Do you disagree with his analysis of this Supreme Court, U.S. Supreme Court's interpretation of what constitutes a true threat? No, I agree it is a communication with the serious intent of instilling fear of violence towards the individual who's receiving the threat or something along those lines. I have the exact definition on here. But yes, I agree with that, Your Honor. The problem that there seems to exist with the statute is you've got this confluence of the intent of the speaker and the state of mind of the recipient. Somehow we're supposed to glean from the language of the statement what the intent of the speaker is. Then determine whether whatever was said is enough to create this reasonable apprehension of fear or danger. Do you agree with that? Yes, I do agree with that, Your Honor. And I think when looking at all the evidence in this case, that is present. Again, the defendant's extremely upset that the judge denied these motions or cases that he had. And then not the next day, he leaves this upsetting voicemail. You know, I'm pretty sure trial judges have thick skin. They probably receive some backlash from the court. So for this judge to follow with criminal charges, and he even said it himself, he was quite a bit concerned with this statement and that it did cause him the fear of future bodily harm. Well, the fact that he was charged doesn't really add anything to the evidence. Correct. Just the fact that the judge took it serious enough to want to follow with charges to charge the defendant. That's not relevant to our analysis. Correct. I'm just discussing that the judge did have that subjective fear of future bodily harm, although that is not dispositive of whether there was a true threat. That is what the state's position is regarding that. Do you have any additional questions? No, thank you. Just give me one moment, please, Your Honor. In regards to whether the inmate slips were properly or improperly admitted, the state's position is that they were, in fact, properly admitted to prove the intent and identity of the defendant. This was a forfeited issue. The defendant did not raise below. There was no error that occurred in admitting these. The Illinois Rules of Evidence allows this evidence to come in to show intent and identity. And so, as a result, there was no error. Plain error analysis cannot save defendant. Do you have any more questions regarding these specific issues or any additional questions on the almost 200 other pages of briefing we've had in this case? I see none, Mr. Chairman. Okay, well, thank you, Your Honor. Thank you. The state rests. Mr. St. Duran. Yes, Your Honor. Four points of rebuttal. But before I begin, I would agree with Justice Harris. This is an oral motion for reconsideration. The only problem is Mr. Smith was not very eloquent in his reconsideration. He was obviously angry, hostile, but as this Court has noted in People Redy and the First Amendment, he would. Crude, inept, vulgar language does not amount to true threat. And that is the issue in this case. Which brings me to my first point of review. The standard of review is a de novo standard because we are litigating the definition of a true threat. We are looking at the words, laser focus, as Justice Harris has stated, on the voicemail and seeing whether, given the voicemail, no other issues at contention here. Just the voicemail. Does that meet the definition, both in the dictionary Justice Harris has cited, which matches the language of the Black Law Dictionary, which the U.S. Supreme Court cited in Virginia v. Black, was an expression of an intent to carry out unlawful violence. There was no such expression. Mr. Smith says you'll be hearing from someone. We don't know who that someone is, given the fact that he said there was a he was corrupt. He probably was talking of the J.I.D. I will not belabor that point too much, but as to the apprehension, which is my second issue, is the recipient's subjective belief is not dispositive. What is dispositive is what a reasonable person would determine looking at the words and whether there was an expression of an intent. People's reward in Wood, the judge who was quote-unquote allegedly threatened, said he spent several months avoiding his chambers, taking different routes. He had nightmares. He sought treatment until they finally arrested the alleged culprit and the court found that to not be relevant. Even in this case, the clerk who also would have ticked in as the judge because she's been working with the judge for several years, she said that the voicemail seems unsettling, but didn't have any threat either implied or indirectly or directly. As to the other crimes evidence, in People v. Rosado, the first district said that a similar crime, a specifically similar crime, occurring six days after the charges was filed and after the defendant was released on bond, does not establish intent. It does not suggest that the intent preexisted, the charges. Same thing here. And even worse here, we have two months, two charges. Mr. Smith is in custody, not out on bond. His frustration is boiling. There is no reason to believe that the other crimes, the slips, suggest any preexisting intent or that he even expressed that intent. And if you look at the slips, again, he's referring constantly back, fraudulent charges. You are corrupt. I'm going to prove you guilty. I'm going to beat those charges. And as to the fact whether these issues, my last point on rebuttal, whether this issue was forfeited, it was not. It was litigated. Mr. Smith litigated it. He did not file a motion. He did not include it in his post-trial motion. But it was litigated and it amounts to plain error. It amounts to plain error because without these slips, which are highly prejudicial because of the religious contents in those slips, without these slips, all you have is the voicemail. And as this court has suggested, laser focus on the voicemail, you have nothing. I would ask this court to reverse any of that. Thank you.